#### AT THE

## MARCH SESSION 1871, IN BOSTON.

PRESENT:

HON. REUBEN A. CHAPMAN, CHIEF JUSTICE.
HON. HORACE GRAY, JR.,⎫
HON. JOHN WELLS,          ⎪
HON. JAMES D. COLT,       ⎬ JUSTICES.
HON. SETH AMES,           ⎪
HON. MARCUS MORTON,       ⎭

## SUFFOLK COUNTY.

### WILLIAM L. BURT vs. MERCHANTS' INSURANCE COMPANY.

In the exercise of its right of eminent domain, a state may consent that the United States shall take and hold land for the site of a post-office and treasury.

No previous agreement between the landowner and the United States, for the sale by the one and purchase by the other of land in Boston, to the purchase of which by the United States for the site of a post-office and treasury the consent of the Commonwealth was given by the St. of 1870, c. 327, is necessary to entitle the agent of the United States to have the valuation of the land made by a jury under § 2, and to vest the fee of it in the United States upon a compliance with the conditions contained in that section.

PETITION under the St. of 1870, c. 327,* by William L. Burt, as the agent employed by the United States under said statute,

---

* The St. of 1870, c. 327, was entitled "An act giving the consent of the Commonwealth to the United States for the purchase of additional land in the city of Boston, for the sub-treasury and post-office site."

to the superior court for this county; describing the second estate mentioned in § 1, being an estate owned by the Merchants' In-

SECTION 1 provided that "the consent of this Commonwealth is hereby granted to the United States to purchase additional land for the site of the new post-office and sub-treasury building in the city of Boston, the said additional land lying adjoining the tract already purchased by the United States in the block bounded by Devonshire, Water, Congress and Milk streets." Then followed a description of "the said tracts of additional land" including "second, another tract, being an estate owned by the Merchants' Insurance Company, fronting on Water Street, bounded and described as follows," &c., "and jurisdiction is hereby ceded to the United States over the said tracts respectively, or any part or portion thereof, when the United States shall become the owner thereof: provided, always, that this Commonwealth shall retain and does retain concurrent jurisdiction with the United States in and over all the lands aforesaid, so far that civil processes and criminal processes, issuing under the authority of this Commonwealth, may be executed on said land and in any buildings thereon erected or to be erected thereon, in the same way and manner as if jurisdiction had not been granted as aforesaid; and provided, that the exclusive jurisdiction shall revert to and revest in the Commonwealth of Massachusetts whenever said lands shall cease to be used by the United States for public purposes."

SECTION 2 was as follows: "If the agent or agents employed by the United States, and the person or persons owning or interested in either of said estates, cannot agree upon the price to be paid for their interest therein, the agent or agents of the United States may apply by petition to the superior court for the county of Suffolk, such petition to be made separately as to each of said estates, describing the estate and praying to have the valuation thereof made by a jury; and the court, after due notice to the owner or owners of the estate described in such petition and to all parties interested therein, to be given in such manner as the court may order, is hereby empowered and required to hear the parties and finally determine the value of their said estate, (taking into consideration the injury or benefit, if any, which said owners or persons interested may sustain in any adjoining estate,) by a jury, who shall be sworn to faithfully and impartially make such appraisement and valuation. And if any person or persons, other than the owner or owners of said estate, shall appear and claim any interest in said estate, the value to the owner of the fee and to all persons interested in said estate, shall be ascertained and apportioned in the same manner as is provided for the assessment of damages in section fifty-five of chapter forty-three of the General Statutes; and the clerk of the superior court, for civil business, for the county of Suffolk, shall, during the present term of the superior court, if practicable, and if not, at the following July term thereof, issue writs of *venire facias*, for jurors to make the appraisements

surance Company, fronting on Water Street in Boston ; alleging that " the said Merchants' Insurance Company consented and agreed to sell said parcel of land to said United States, and said United States consented and agreed to buy the same," but that the petitioner and the company could not agree upon the price to be paid for it; and therefore praying to have the valuation thereof made by a jury, pursuant to § 2.

Notice was ordered upon the petition, and the Merchants' Insurance Company appeared and answered, 1. that the statute was unconstitutional and void, and 2. that they never agreed to sell the land, or the United States to buy it.

At the hearing, the petitioner offered no proof of any agreement of the United States with the respondents for a purchase and sale of the land ; *Lord*, J., ruled that the petition could not be maintained without such proof ; and the petitioner alleged exceptions.

*G. A. Somerby & T. S. Dame*, for the petitioner.

*J. D. Ball*, for the respondents. 1. The St. of 1870, *c.* 327, authorizes the United States only to purchase, not to take against

and valuations aforesaid, and shall therein require the attendance of said jurors on such day as the court shall order, and said writs shall be severally issued, delivered, transmitted, served and returned in the same manner as now provided as to other juries by chapter one hundred and thirty-two of the General Statutes ; and the value aforesaid having been ascertained, by the verdict of said jury, and said verdict accepted and recorded by said court, and the amount thereof paid, or tendered, within one month after final judgment, to the said owner or owners, or persons interested, or their agent or attorney, together with their reasonable costs and expenses, to be taxed by said court, or in case of their neglect or refusal to receive the same, the amount of said verdict, costs and expenses having been paid into the treasury of this Commonwealth, for their use, and subject to their order, the fee of said estate shall be forever vested in the United States: provided, however, that neither the United States nor their agent or agents shall enter into or take possession of said estates, respectively, or exercise any act of ownership thereon, until the amount of said verdict, costs and expenses aforesaid shall have been actually paid as aforesaid ; and provided, also, that all the charges of said application and appraisement shall be paid by the United States. The applications aforesaid may, by agreement of parties, be heard and determined together, but a separate valuation shall be made and a separate verdict rendered in each case."

the owner's will. It was passed in view of that provision of the Constitution of the United States (art. 1, § 8,) which gives congress power to exercise exclusive legislation over the seat of government and over all places "purchased" by the consent of the legislature of the state in which the same may be, for the erection of forts, magazines, arsenals, dock-yards and other needful buildings. A purchase by its terms imports the assent of both buyer and seller, not an appropriation of property without the consent of the seller. It is, therefore, only when the United States have agreed to buy, and the owner to sell, and they disagree as to price, that a case can arise under this statute, which provides a tribunal to determine the price in that event, but not before. It is found that there was no agreement between the United States and these respondents; and therefore the exigency contemplated by the statute, authorizing a jury, did not arise. The only province of the court was, in the exigency stated, to hear the parties, and finally determine the value of the estate by a jury. Neither judge nor jury could pass upon any question except the value of the estate, and questions incidental. The ruling of the court below was therefore correct.

2. If it is contended that the statute is an exercise of the right of eminent domain, in favor of the United States; that is to say, against the owner, a compulsory taking and cession of the land to the United States, and not merely a declaration of the assent of the Commonwealth to a purchase by the United States; then the respondents say that such an exercise of power was not within the constitutional right of the legislature. The right of eminent domain is an attribute of sovereign power only. The state, and the state alone, can exercise it for purposes within the purview of its powers; and so, on the other hand, the government of the United States alone can exercise it for the purposes within the scope of its powers. The state cannot exercise it in favor of a foreign power, or even in favor of a sister state. New York has undertaken to do so in favor of a corporation created by New Jersey. *Morris Canal & Banking Co.* v. *Townsend*, 24 Barb. 658. But this decision does not touch the question now raised.

The cession of jurisdiction is not necessarily an exercise of the right of eminent domain; nor necessarily incident to it. That is another right, which may exist concurrently, or independently. A state takes land for a railroad or a canal, but the taking is not accompanied with any cession of jurisdiction to the railroad or canal corporation.

The United States, acting through congress, has the right of eminent domain for all purposes incidental to the exercise of the powers conferred by the Constitution, and such as exist by necessary implication, and none other; and so, on the other hand, the state, as to other purposes, has the same right, even.to the extent of taking public lands of the United States, as was decided in *United States* v. *Railroad Bridge Co.* 6 McLean, 517, and *Illinois Central Railroad Co.* v. *United States*, 20 Law Reporter, 630. But neither a state, nor any of its derivative governments, as those of a county or municipality, can take, for public purposes, land occupied by the United States for specific purposes, such as a custom-house, a post-office, or a court-house; nor can the United States take for its purposes land occupied by the state, or any of its derivative governments, for specific purposes, such as a state-house, a public highway, a court-house, or a city hall.

The fifth amendment of the Constitution of the United States provides that private property shall not be taken for public use without just compensation. The provision is one prescribing the terms upon which the United States may exercise the right, and not one which has reference to the states; as has been distinctly and repeatedly decided. *Barron* v. *Mayor of Baltimore*, 7 Pet. 243. *Livingston* v. *Moore*, Ib. 469, 551. *Fox* v. *Ohio*, 5 How. 410, 434. *Withers* v. *Buckley*, 20 How. 84. *Bonaparte* v. *Camden & Amboy Railroad Co.* Baldwin, 205, 220. *James* v. *Commonwealth*, 12 S. & R. 220. *Barker* v. *People*, 3 Cowen, 686. *Livingston* v. *Mayor of New York*, 8 Wend. 85. *Concord Railroad Co.* v. *Greely*, 17 N. H. 47, 64. *In re Mt. Washington Railroad Co.* 35 N. H. 134, 141. It is a provision limiting while at the same time recognizing, the power as existing in the United States. Such a power was essential to the federal government, and, if not declared in express terms, would have been

among its powers by necessary implication. As an illustration, it might be asked whether the United States could be debarred by a state from establishing a post-road, or building forts, arsenals, dock-yards, custom-houses or post-offices, within its limits. Is the right of congress to take and use land within the borders of any state, for any of these purposes, dependent upon the will of that state? If so, the United States is at the mercy of a single state. Congress alone, therefore, could exercise the right of eminent domain in respect to the land now in question, for the purpose of building and maintaining a sub-treasury and post-office; because the erection and maintenance of buildings for these purposes were clearly within the power of the United States alone. And congress has not seen fit to exercise it in this instance.

There existed, then, no necessity for its attempted exercise by the Commonwealth in favor of the United States. And the right, in a state and the United States, of eminent domain for the purposes of the federal government, cannot be concurrent. One must be paramount. Suppose congress should pass a law taking land for its own purposes, and referring the determination of the value to a federal court, and the state should also pass a law taking the land for the United States for the same purposes, and referring the determination of .its value to one of its own tribunals, which is to have precedence? Or if these distinct tribunals should value the property at different times, which valuation is to govern? The respondents therefore repeat that, for any purposes within the powers given to the United States, the United States alone can exercise the right of eminent domain; and a state can alone exercise it for purposes within the scope of its powers; and the right in each, thus limited, may exist and operate in perfect harmony.

CHAPMAN, C. J. This process is brought to obtain an appraisement of a tract of the land described in the petition, alleging that the petitioner, who is the agent of the United States, and the respondents, who are owners of the land, cannot agree upon the price to be paid for it. It is contended that the process cannot be maintained unless there has been an agreement of the petitioner that he will buy, and of the respondents that they will

sell, leaving merely the question what is to be paid unsettled, and that, without such agreement, neither the Constitution, nor the language of the statute, authorizes the United States to take the land upon the appraisement of a jury.

It is obvious that, if the statute does not require an agreement of any kind on the part of the landowner, it is intended as an exercise of the right of eminent domain. The respondents deny the power of the legislature to delegate the exercise of this right to an agent of the United States, for the purpose of obtaining a site for a post-office.

It cannot be held that the legislature must exercise this right by its own agents, appointed exclusively for that purpose. There is no constitutional provision on the subject. Article 10 merely provides that, whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor. The usual method of making the appropriation is to authorize some corporation to take the property in the manner prescribed by a statute. In this manner, the right of eminent domain is exercised by railroad, turnpike, canal and aqueduct corporations; and the property passes, not to the state, but to them. In the same way, land is taken by counties for court-houses, and by towns for school-houses. And from a very early period the legislature have been in the habit of consenting that the United States may take land for various public purposes.

Some of these acts contain merely a consent to a purchase, as St. 1855, *c.* 127, relating to the custom-house in Barnstable, and St. 1858, *c.* 157, relating to land for the United States court-house in Boston. Where the parties have already agreed, there is no need of any further provision. But many of them are almost precisely like the act in this case. They first consent to a purchase, and then provide that, if the parties cannot agree in a sale or a purchase, the land may be appraised by a jury upon petition, and on payment or tender of the amount of the appraisement, with costs, the land shall vest in the United States.

Of this character was St. 1798, *c.* 13, consenting to the purchase of land for the Springfield armory; also St. 1800, *c.* 26,

consenting to the purchase of land in Charlestown for the purpose of a navy or dock-yard. Under this last act, the agent of the United States took the land by procuring the appraisement of a jury. See *Harris* v. *Elliott*, 10 Pet. 25. So that the right of eminent domain was actually exercised under the act, and the supreme court of the United States assume the legality of the act, and say that the title vested in the United States by virtue of the act. In 1790, *c.* 4, a similar act was passed in respect to certain light-houses; in 1798, in respect to Castle Island; in 1816, *c.* 15, in respect to land in Watertown for an ordnance depot; in 1835, *c.* 98, in respect to a light-house in Marblehead. These, and several other acts not cited, show that the legislature have habitually authorized the United States to acquire lands by an exercise of the right of eminent domain. It could not be ascertained without investigation, in which of the cases referred to they have been obliged to resort to the appraisement of a jury. But it is now too late to question the validity of such acts, even if there could have been any reasonable doubt about it originally. No intelligent person can suppose that the state is not interested in the establishment of light-houses, navy-yards and arsenals within its limits, quite as much as the United States. And as to a post-office in the city of Boston, the people of that city are peculiarly interested in it. The whole Commonwealth is also largely interested in it; and it is established by the United States for a purpose exclusively public. It is difficult to conceive of a more proper case for the exercise of the rights of eminent domain.

Adjudications have been made upon this subject in some of the states. In *Reddall* v. *Bryan*, 14 Maryl. 444, it was held that under this right the legislature of that state might authorize the taking of water to supply the city of Washington. In *Gilmer* v. *Lime Point*, 18 Cal. 229, an act of the legislature of California authorized the agents of the United States to take certain lands for fortifications, and if the owners were unknown, or were incapable of conveying, or refused to convey, the agent of the United States might apply for an appraisement by a jury, and upon tender or payment of the amount of the verdict and costs, the sheriff of the county might convey the land. The validity

of this statute was contested, the case was discussed very elaborately, and the court held that it was a valid exercise of the right of eminent domain.

We cannot doubt the validity of the act in question in this case. But it is further contended that the terms of the act itself do not authorize this application for an appraisement by a jury, unless the respondents shall first have given their consent to a sale.

It is obvious that such a construction of the second section would defeat its own end; for, if the consent of the owner must first be. obtained, he will never give it until the buyer agrees to pay the price that he is willing to take. He may either fix it himself, or agree that some one else shall fix it. But the provision as to the right to apply for a jury is nugatory. We cannot suppose that the legislature intended to deal thus with the United States. It is to be assumed that they used the word " purchase " in its legal signification. It includes every lawful method of coming to an estate by the act of a party, as opposed to the act of law. Thus it includes titles obtained by sale of property on execution by a sheriff, or by levy, in which cases there is no consent of the debtor, nor any conveyance- from him. And it includes titles obtained by exercise of the right of eminent domain. If a statute authorizes the appraisement by a jury, and vests the title upon payment or tender of the amount of the verdict, with costs, the property is held under a statute conveyance, and the title is, in legal phrase, by purchase.

As the parties in this case could not agree upon the price to be paid, the contingency has arisen which authorizes the court to proceed upon the petition, and procure an appraisement by a jury. It could not be necessary to obtain a consent to the sale, which of necessity includes some agreement either fixing the price definitely or providing some method by which it shall be fixed. Nor is the statute to be construed as subjecting the United States to the option of the owners of the property in respect to an important public interest. The petitioner is entitled to proceed and obtain an appraisement under the statute, and upon a compliance with the conditions which it prescribes the title will vest in the United States by force of the statute.

*Exceptions sustained.*