## SUPREME COURT.

In the Matter of the Petition of the UNITED STATES for the appointment of commissioners, pursuant to chapter one hundred and forty-seven of the Laws of the state of New York of the year one thousand eight hundred and seventy-six, as amended by chapter three hundred and forty-five of the Laws of one thousand eight hundred and seventy-nine.

*Constitutional law — Constitutionality of chapter* 147 *of the Laws of* 1876, *in relation to the improvement of the Harlem river and Spuyten Duyvil creek, and the various acts amendatory thereof, upheld.*

On a motion to vacate and set aside several orders and proceedings thereunder or subsequent thereto, which had for their object the carrying into effect the various statutes in relation to the improvement of the Harlem river and Spuyten Duyvil creek, on the ground that chapter 147 of the Laws of 1876, chapter 345 of the Laws of 1879, chapter 65 of the Laws of 1880, chapter 61 of the Laws of 1881, chapter 387 of the Laws of 1882, chapter 410 of the Laws of 1882 and chapter 214 of the Laws of 1883 are, and each of them is, unconstitutional and void, as being in contravention of section 6 of article 1, and also of section 11 of article 8 of the constitution of the state of New York:

*Held, first,* that the purposes to which the land sought to be taken in these proceedings are to be devoted are public within the meaning of our constitution. The use being in its nature public, the legislature are the sole judges of the question whether the benefit to our citizens or to the state is such as to warrant the taking of private property therefor, and are also the sole judges of the question of the supervision or control over the use, which should be retained in order to secure the contemplated public benefits.

*Second.* A court at special term should not declare an act to be in conflict

Matter of United States.

with the provisions of the Constitution of the United States or of the state, unless its conflict with those provisions is clearly apparent.

*Third.* That the acts are not unconstitutional in that private property condemned is not taken for a public use within the meaning of the constitution.

*Fourth.* That a sure pledge is given to the owners of lands taken that they shall be paid before possession of the lands is taken under the acts, and the act is not subject to the criticism that a first, sure and certain compensation is not secured to said owners for the value of their property.

*Fifth.* Nor can it be said that the lands in question are proposed to be taken without due process of law. If the acts are valid, the taking is by due process of law.

*Sixth.* Nor are the proceedings invalid because they were not instituted by the United States district attorney for this district.

*Seventh.* That the widening, deepening and improvement of the Harlem river, as contemplated by the acts is a city purpose. The improvement, if carried out, will develop that portion of the city which fronts upon the Harlem river, and will bring into closer communication the parts of the city which lie upon either side of the river, which river now runs exclusively within the city limits.

*Eighth.* That if the acts of the legislature are constitutional in other respects a private individual cannot raise the objection that the lands of the city have been illegally given away.

*Ninth.* That the objections to the acts cannot be sustained on the ground that the assessments take from the party assessed private property for the public use. The legislature has power to take lands under eminent domain and to pay for them by assessments on the land benefited thereby.

*Tenth.* That the constitution does not require that the title of an act should specify all of its provisions. In this case the general subject is expressed in the title, which is the single one of acquiring the right of way, and what is necessarily incidental to it for the improvement of the Harlem river, and although there are changes in the details for carrying ont the scheme of the improvement, the general subject of all the acts remains the same.

*New York, Chambers, February,* 1884.

*Samuel E. Lyon* and *Thomas L. Ogden,* for petitioners, in opposition to motion.

*D. G. Crosby* and *Gratz Nathan,* for Dykman and others, in opposition to motion.

*Franklin Bartlett*, for Henry W. T. Mali and others, objectors, for the motion.

*Hamilton Odell*, for W. B. Isham, objector.

*Charles E. Miller*, for contestants.

LAWRENCE, *J.*— This is a motion to vacate and set aside the several orders made herein on the 24th, 27th, and 31st days of October, 1879, and all proceedings thereunder or subsequent thereto, on several grounds :

*First.* That chapter 147 of the Laws of 1876, chapter 345 of the Laws of 1879, chapter 65 of the Laws of 1880, chapter 61 of the Laws of 1881, chapter 387 of the Laws of 1882, chapter 410 of the Laws of 1882, and chapter 214 of the Laws of 1883, are and each of them is unconstitutional and void, as being in contravention of section 6 of article 1 of the constitution of the state of New York, because :

" 1. The said act or acts do not provide for the acquisition of the lands therein described and referred to by due process of law.

" 2. That the said act or acts do not provide just compensation for the lands taken or sought to be taken.

" 3. The use for which the lands therein described or referred to is set apart, is not a public use.

" *Second.* That said acts are and each of them is unconstitutional and void, as being in contravention of section 11 of article 8 of the constitution of the state of New York, because it is sought thereunder to allow the city and county of New York to incur an indebtedness for purposes other than city or county purposes.

" *Third.* That all the proceedings heretofore taken herein or now pending under said acts, are unconstitutional, void and illegal.

" 1. Because the right of eminent domain cannot be exercised by the state of New York for the benefit of the United States.

" 2. Because the congress of the United States has passed no act, bill or resolution authorizing the said proceedings or the taking of lands therefor, and has not consented to the United States becoming a party to the proceedings.

" 3. Because the so-called Harlem river improvement is a private scheme, uncertain of accomplishment, and to the execution or accomplishment of which the United States is in no way pledged.

" 4. Because the attorney for the United States for this district did not bring or institute the proceedings, and has taken no part in them, but the movers in this matter, unwarrantably and without authority of law, pretend to represent the United States herein.

" 5. Because the petition itself is not verified by any duly authorized official or person, but is verified by one John Newton, an engineer in the federal service, who has verified said petition, without having been legally authorized so to do.

" The order of the 24th October, 1879, referred to in the notice of motion which is entitled as hereinbefore set forth, recites : ' That the above entitled matter having come on to be heard upon the petition herein, dated October 8, 1879, of the United States, by John Newton, the engineer in charge of the improvements for the United States therein mentioned.'

" Now, upon reading and filing said petition and notice of presentation thereof, and proof or admission of due service of a copy of said petition and notice upon the persons whose estates or interests in the parcel of real estate hereinafter mentioned are to be affected by these proceedings, or upon their attorneys or guardians who have appeared herein, and a guardian *ad litem* having been duly appointed for the infants interested therein, and on all the proceedings herein, and after hearing Mr. Samuel E. Lyon, of counsel for said petitioner, and Messrs. F. & H. L. Morris, attorneys for Henry W. T. Mali, and Mr. Fordham Morris, guardian *ad litem* for Henry L. Cammann and Isabella M. Cammann, and on motion of Mr. Thomas L. Ogden, attorney for said petitioner, it is

ordered, that William R. Grace, William F. Smith and James D. Fish, three disinterested and competent persons who reside in the city of New York, be and they hereby are appointed commissioners of estimate and assessment to ascertain and appraise the compensation to be made to the said Henry W. T. Mali, &c., according to their several interests in said real estate, &c., and also the amount to be assessed upon the real estate in front of and benefited by such improvement."

The orders of the 27th and 31st days of October, 1879, referred to in the notice of motion, I do not find among the papers, but I assume, from the statements of counsel and from the arguments presented on the hearing of the motion, that they also related to the appointment of commissioners of estimate and assessment, under the various acts the validity of which is now assailed.

It is proper that I should state, before proceeding to the consideration of the question to be determined on the disposition of this motion, that the general term of this department, in an opinion very recently filed, has sustained the legality of the counsel fee and compensation charged by the counsel and attorney for Major John Newton, upon whose application on behalf of the United States the order or orders appointing commissioners of estimate and assessment was or were made. It also appears, from the papers in the case, that a motion has been made for the confirmation of the report of the commissioners of estimate and assessment, and that the same has been adjourned from time to time, but that said motion has never been fully heard or decided. Also that proceedings are now going on before a referee to determine the amount of the costs and expenses of the proceedings.

The first suggestion which presents itself to the court when called upon to determine the constitutional objections to the acts in question, which have been so elaborately presented by counsel, is that this motion is premature, for the reason that if it be conceded that the acts are obnoxious to the criticism made upon them by the counsel for the objecting parties,

inasmuch as the report of the commissioners has never been and may never be confirmed, said parties are as yet not injured, or put in jeopardy as to any of their rights, by the proceedings already taken. Recent decisions have, however, sustained the position that it is proper to present the questions raised on the motion, on an application to the court to vacate the orders already made and the proceedings already taken, and in obedience to those decisions I shall proceed to examine some of the points made upon the motion (*See in the Matter of the City of Buffalo*, 78 *N. Y. R.*, 362; *In the Matter of the Department of Public Works*, 85 *N. Y. R.*, 459; *In the Matter of Cooper*, 28 *Hun*, 515).

In doing so I shall follow rather the order in which said points are presented in the briefs of the parties, than that in which they are stated in the objections.

The first point made is that the state of New York cannot condemn lands for the use of the general government, because the right of eminent domain cannot be exercised by one sovereignty for the uses of another, and in support of this position the case of *Kohl* agt. *The United States* (1 *Otto*, 367), and *Twombly* agt. *Humphrey* (23 *Mich.*, 471), and *Darlington* agt. *The United States* (82 *Penn.*, 382), are cited. Before speaking of these cases it will be well to examine .a case decided by the court of appeals in our own state, which, I think, disposes of this objection adversely to the parties taking it. In the case, *In the Matter of Peter Townsend* (39 *N. Y. R.*, 171), it was held that an act of the legislature taking land in this state for the public use is not unconstitutional, because the instrumentality employed for that purpose is a corporation created by the laws of another state, nor because such corporation derives a pecuniary benefit from the use of the land so appropriated, nor because the lands appropriated are to be used for the maintenance of a navigable canal *which runs along the border of the state and without its limits*, and it is in that case declared that if the use be in its nature public, the legislature are the sole judges of the question whether the

benefit to our citizens or to the state is such as to warrant the taking of private property therefor, and are also the sole judges of the question, *what supervision or control over the use should be retained in order to secure the contemplated public benefit.*

In that case judge WOODRUFF, in his opinion, says: " It is far too late in the history of legislation and adjudication, in this country and in this state, to claim that private property may not be taken for what in common parlance are called public improvements, such as railroads and canals, with their incidental and reasonable conveniences and appurtenances, notwithstanding the work is done by individuals or a corporation who are to derive a pecuniary benefit therefrom, if the legislature deem it for the public interest (*Bloodgood* agt. *The Mohawk and Hudson Railroad*, 18 *Wend.*, 9). Continuing, the learned judge says : ' If, then, the use is public, and the power to take and appropriate may be conferred upon individuals or corporations, I know of no restraint upon the legislature in the selection of the parties to whom the power to take and apply shall be delegated. Certainly, the constitution contains neither prescription nor limitation. It is clear, I think, and has so been uniformly held, ever since the case above referred to, that as to the instrumentality employed and the manner in which the property shall be taken and applied to the public use, the legislature are the sole judges. Their supreme power over the subject is qualified only by the three particulars : The use must be public, compensation must be given, the amount required as compensation must be ascertained by a jury or by not less than three commissioners appointed by a court of record.

"It has been said that the right of eminent domain implies the right in the sovereign power to determine the time and occasion, and as to what particular property it shall be exercised (*Heyward* agt. *The Mayor*, 7 *N. Y.*, 314). This can hardly be supposed to import that the legislature can, by its mere declaration, override the constitution; that by de-

claring the use to the public, when it is within the constitution a private use, it can authorize the property of one citizen to be taken from him and given to another for a compensation to be ascertained in the manner above stated, but only that where the use for which the property is desired is in its nature public, the legislature are the supreme and final judges of the question whether the public necessity or benefit is such as to call for the exercise of the power; whether the time is a fitting one; what particular property may be taken, and in what manner in respect to the instrumentality to be employed for the purpose — whether state officers, individuals or corporations. All these are purely matters of discretion within the exclusive cognizance and jurisdiction of the legislature, and in those matters I apprehend no court can review its action."

It cannot be doubted that the purposes to which the land sought to be taken in these proceedings are to be devoted are public, within the meaning of our constitution. The general scope and tenor of the various acts under which the proceedings were instituted is to the effect that the United States shall acquire a right of way for the improvement of the Harlem river and Spuyten Duyvil creek, from the North river to the East river, through the Harlem Kills, and ceding jurisdiction over the same. The general use may, I think, be regarded as a public use for the people of the whole United States, but it is quite obvious that the improvement of the Harlem river and Spuyten Duyvil creek would result in a use specially beneficial not only to the city of New York but to the people of the state of New York, and this use would necessarily confer greater benefit upon the people of this city and of this state, and upon those owning adjoining property, than would result to the people of the United States. At all events, sitting as a justice at chambers, and keeping in mind the broad and extensive construction given to the words "public use," in the case of *Townsend*, before referred to, and remembering that the court in that case has decided that, *if the use be in its nature public*, the legislature are the sole judges of the question

Matter of United States.

whether the benefit to our citizens or to the state is such as to warrant the taking of private property therefor, and are also the sole judges of the question of the supervision or control over the use, which should be retained in order to secure the contemplated public benefits, I cannot say that the acts in question are unconstitutional, because the use to which the lands proposed to be taken are to be devoted is not public. The legislature may well have thought that in the interest of commerce and navigation generally it was desirable that the United States should acquire the title to the lands in question, and yet may also have thought in view of the peculiar interests which the people of the state of New York, and particularly to the city of New York, had in the improvement of the Harlem river, the use was for the benefit specially of the people of the state and city of New York.

In the case just referred to the corporation was created under the laws of New Jersey. Its canal ran from the Delaware river in New Jersey to the Hudson river at a point opposite the city of New York, and the title upon the consummation of the proceedings became vested in this foreign corporation. But it is contended that while the case of *Townsend* is controlling upon the point, that the right may be given to a corporation of a sister state, or to individuals residing therein, to take lands for the public use in the state of New York, the reasoning of the case does not lead to the conclusion that the state of New York can condemn lands for the use of the general government, because the right of eminent domain cannot be exercised by one sovereignty for the uses of another. As I have said, the cases of *Kohl* agt. *The United States* (1 *Otto*, 367), and *Twombly* agt. *Humphrey* (23 *Mich.*, 471), and *Darlington* agt. *The United States* (82 *Penn.*, 382), are cited in support of this view. In the case of *Kohl* agt. *The United States* this question did not necessarily arise because there the proceedings were instituted by the United States by an act of congress to appropriate a parcel of land in the city of Cincinnati as a site for a post-office and other pub-

lic uses, and there the proceedings were instituted in the circuit court of the United States for the southern district of Ohio, and it was decided that the right of eminent domain exists in the government of the United States, and may be exercised by it within the states so far as necessary to the enjoyment of the power conferred upon it by the constitution. The case did not necessarily involve the question whether an act of the legislature of the state of Ohio, authorizing proceedings to be taken for the acquisition of the desired land in the state courts, for the use and benefit of the United States, would have been invalid and unconstitutional. It is true that justice STRONG, in delivering the opinion of the court, stated that " in some instances the states by virtue of their own right of eminent domain have condemned land for the use of the general government, and such condemnation have been sustained by their courts, without, however, denying the right of the United States to act independently of the states. Such was the ruling in *Gilmore* agt. *Lime Point* (18 *Cal.*, 229), where lands were condemned in a state court and under a state law for a United States fortification. A similar decision was made in *Burt* agt. *Merchants' Insurance Company* (106 *Mass.*, 356), where land was taken under a state law as a site for a post-office and sub-treasury building. Neither of these cases denies the right of the federal government to have land in the states condemned for its use under its power and by its own action. The question was whether the state could take lands for any other public use than that of the state. In *Twombly* agt. *Humphrey* (23 *Mich.*, 471), a different doctrine was asserted, founded, we think, upon a better reason. The proper view of the right of eminent domain seems to be that it is a right belonging to a sovereignty to take private property for its own public uses, and not for those of another. Beyond that there exists no necessity, which alone is the foundation of the right. If the United States have the power it must be complete in itself. It can neither be enlarged nor diminished by a state, nor can any state prescribe the manner

in which it must be exercised. The consent of a state can never be a condition precedent to its enjoyment. Such consent is needed only, if at all, for the transfer of jurisdiction and the right of exclusive legislation after the land shall have been acquired."

If the direct point had been in issue in that case as to whether a statute of a state conferring the power to take lands for the public use, which was beneficial to the people of the United States, and especially beneficial to the people of the state, was unconstitutional, the case would have been absolutely controlling, but, as before observed, such was not the case. The proceedings were taken under an act of congress; they were taken in the United States court and an argument was made by the counsel for the plaintiffs in error to the effect that as for upwards of eighty years no act of congress had been passed for the exercise of the right of eminent domain in the states, and as congress had never given to the circuit court jurisdiction of proceedings for the condemnation of property brought by the United States in the assertion or enforcement of that right, a change of policy by congress should not (to use the language of counsel) be supposed unless the act was explicit. I agree with the learned counsel who argued this matter in opposition to the objections, that there was in fact no constitutional question in the case, because the counsel in that case admitted that the right of eminent domain exists in the government of the United States, and I also agree that the only disputed question in the case bearing on the subject was upon the construction of the act, whether the act of congress itself authorized the secretary to take the necessary steps to condemn the land.

In the case of *Twombly* agt. *Humphrey* (23 *Mich.*, 473), decided by the supreme court of Michigan, is directly in point, but opposed as it is to the well considered determination of the supreme court of Massachusetts in *Burt* agt. *Merchants' Ins. Co.* (106 *Mass.* 356), and the decision of the supreme court of the state of California in *Gilmer* agt. *Lime Point* (18

Matter of United States.

*Cal.*, 229), I do not feel constrained to follow it after the very broad definition of the term "public use," which is given *In the Matter of Townsend* (39 *N. Y.*, 171), before referred to. The opinion in the California case, delivered by Mr. justice BALDWIN, seems to me to be an exceedingly thorough exposition of the power of the state in the exercise of the right of eminent domain (*See particularly the observations of the learned justice on pp.* 255 *to* 260).

The case of *Darlington* agt. *The United States* (82 *Penn.*, 382) supports the view maintained by the supreme court of Michigan, and is adverse to that expressed by the supreme courts of Massachusetts and California. Taking the view most favorable for the objecting parties, it can only be said that there may be doubts under the decisions rendered in other states as to the constitutionality of these acts, and in such a case it has been held that a court at special term should not declare an act to be in conflict with the provisions of the Constitution of the United States or of the state, unless its conflict with those provisions is clearly apparent, and as the reasoning in the leading case in this state, to wit, *The Matter of Townsend* (39 *N. Y.*, 171), seems to me to support the validity of these statutes so far as the point now under consideration is concerned, I think that they must be held to be constitutional (*See, again, particularly the observations of* BALDWIN, *J., in Gilmer* agt. *Lime Point*, 18 *Cal.*, 255).

The observation just made disposes of the second objection urged upon this motion as to the constitutionality of these acts, which is, that said acts are unconstitutional, in that private property condemned is not taken for a public use within the meaning of the constitution. It is also urged that the acts of the legislature in question are unconstitutional and void, because they attempt to take private property without making any just compensation therefor. I do not think, however, that the acts, as amended at the time this motion was argued, were obnoxious to this criticism. It will be remembered that the lands of the objecting party have not as yet been taken

under these proceedings. The first section of the act of 1883, amending section 5 of chapter 65 of the Laws of 1880, provides that upon the confirmation of said report of assessment, the comptroller of the city of New York is hereby authorized to raise upon the assessment bonds of the city of New York, in the manner now provided by law, a sum not exceeding $200,000, and to *pay therefrom* the several sums awarded to the persons and parties as owners or interested in the lands and premises taken or to be taken for the purposes of said improvement, as the same shall appear by the report of the commissioners of estimate, and in pursuance of the provisions of the act hereby amended, and as amended when confirmed, and the expenses, charges and disbursements of the proceedings taken under said acts and under the same as hereby amended as taxed and certified by a justice of the supreme court.

Provision is also made by this act for the cases of awards to unknown owners, or to persons who shall decline to receive the same, for depositing the amount of said awards in the New York Life Insurance and Trust Company of the city of New York, to the credit of such persons or party in interest, or unknown owner, and the act provides *that thereupon the United States shall be entitled to enter upon, take possession of, and use the said lands or premises for the purpose of said improvement, and all persons who have been made parties to the proceedings shall be divested and barred of all right, estate and interest in said lands, &c.*

Thus it seems to me that a sure pledge is given to the owners of lands taken, that they shall be paid before possession of the lands is taken under the acts, and the act is not subject to the criticism that a just, sure and certain compensation is not secured to said owners for the value of their property (*See Sage* agt. *The City of Brooklyn*, 89 *N. Y.*, 189, *and cases cited at p.* 195).

Assuming that the positions, above taken are sound, it cannot be said that the lands in question are proposed to be

taken without due process of law. If the acts are valid, the taking is by due process of law. Nor can I, on this motion, hold that the proceedings are invalid because they were not instituted by the United States district attorney for this district. The recent opinion of the general term of this department sustaining the right of Messrs. Lyon and Ogden to compensation claimed under these acts renders it unnecessary for me to say more upon this point. If the proceedings had no validity whatever because they were not instituted by the district attorney of the United States for this district, no compensation could legally have been awarded to the attorney and counsel conducting them.

It is also contended that the acts in question are unconstitutional and void, because it is sought thereunder to allow the city and county of New York to incur an indebtedness for purposes other than city and county purposes (*See sec.* 11 *of art.* 8 *of the Const. of the State of New York*). I have already endeavored to show that the use of the lands proposed to be taken is not only a public use, beneficial to the people of the entire nation, but also to the people of the state, *and particularly to the people of the city*, and the observations of judge EARLE in delivering the opinion of the court in the *Brooklyn Bridge case* (*see People ex rel. Murphy agt. Kelly*, 76 *N. Y.*, 487), seem to me to be pertinent on this point, and to establish, if I am correct in my understanding of the benefits to be derived by this city from the improvement in question, that the moneys authorized to be raised by the city will be devoted to a city purpose.

The learned justice, at page 487 says: "Nor can it be said that the indebtedness authorized to be incurred by the cities for the construction of the bridge was not for a city purpose. It is impossible to define, in a general way with entire accuracy, what a city purpose is within the meaning of the constitution. Each case must largely depend upon its own facts, and the meaning of these words must be evolved by a process of exclusion and inclusion in judicial construction. It could not

be a city purpose for the city of New York to build a railroad from that city to Philadelphia, or to improve the navigation of the Hudson river generally between that city and Albany, although incidental benefit might flow to the city. Such works have never been regarded as within the legitimate scope of municipal government. On the contrary, it would be a city purpose to purchase a supply of water outside of the city, and convey it into the city, and for such a purpose a city debt could be created. So, lands for a park for the health and comfort of the inhabitants of a city, could be purchased outside the city limit, and yet conveniently near thereto. Such improvements are for the common and general benefit of all the citizens, and have always been regarded as within the scope of municipal government; and so, too, highways or streets leading into a city or village, may be improved provided the improvements be confined within such limits that they may be regarded as for the common benefit and enjoyment of all the citizens."

I think that under the definition above given of a city purpose, it may fairly be contended that the widening, deepening and improvement of the Harlem river, as contemplated by the acts under consideration, is a city purpose. The improvements, if carried out, will develop that portion of the city which fronts upon the Harlem river, and will bring into closer communication the parts of the city which lie upon either side of the river. It should be remembered, in considering this subject, that the Harlem river now runs exclusively within the city limits.

As to the sixth point in the brief submitted by the counsel for Mr. Mali, it seems to be sufficient to say that if the acts of the legislature are constitutional in other respects, a private individual cannot raise the objection there sought to be taken (*See observations of judge* FINCH *in People* agt. *Brooklyn, Flatbush and Coney Island Railroad,* 89 *N. Y.,* 93). If the lands of the city have been illegally given away, it will be time enough to consider that question when the city complains.

.The objections to the acts cannot be sustained on the grouud that the assessments take from the party assessed private property for the public use. Since the case of the *People* agt. *The Mayor, &c., of New York* (4 *Comst.*, 419), it cannot be asserted that a public improvement in which the land is taken under the power of eminent domain may not be paid for by assessments imposed under the taxing power of the state upon the lands of the owners of adjacent or surrounding property which are deemed to be benefited by the improvements. In other words, the powers may be exercised in reference to the same improvements (*see opinion of* RUGGLES, *J., at page* 436, *in which he says that the case of Livingston agt. The Mayor, &c., of New York,* 8 *Wend.,* 85, 101), " affords an example of the exercise of the two powers before mentioned, that is, the power of eminent domain and the power of taxation ; the first in taking the land for the use of the street, *and the second in requiring contribution to defray the expenses of improving it from that class of persons on whom the burthen ought to fall. The case affirms the validity of street assessments in virtue of the latter power.*"

The case of the *People* agt. *The Mayor, &c., of Brooklyn,* is conclusive as to the power of the legislature to take lands under eminent domain and to pay for them by assessments on the land benefited thereby. That is precisely what the legislature has done by the acts under review. The subject is the improvement of the Harlem river, which is beneficial to the whole city, but specially beneficial to those lands which are within the area of assessments laid out by the commissioners. So, the opening of any street or avenue in the city is beneficial to all the people of the city, but although the land is taken for public use, it can legally be paid for by moneys raised by assessment upon the lands of those who are pecuniarily benefited by the improvement.

It seems to me that the position of the counsel for the commissioners, that the subject of the acts is the single one of acquiring the right of way, and what is necessarily incidental

to it for the proposed improvement, is correct.    Although there are changes in the details for carrying out the scheme of improvement, the general subject of all the acts remains the same.    The constitution does not require that the title of an act should specify all of its provisions.    In speaking of this subject, in the case of the *Sun Mutual Insurance Company* agt. *Mayor, &c., of New York* (4 *Selden*, 252), the act under consideration being the annual tax levy of the city of New York, GARDINER, J., observes : " The title of the act embraces but one subject — the power to tax conferred upon the board of supervisors, and is so far a compliance with the constitution. When we look at the body of the statute we find that subject regulated and modified by special provisions, and the objects designated for which the taxes are to be levied.    But these, it seems to me, are not distinct subjects within the meaning of the sixteenth section.    If the power granted to levy the tax is one subject which has not been questioned, then if the mode in which that power is to be exercised is another, there would be no way of complying with the constitution except by embodying the whole act in the title."    And again he says, on page 253 : " There must be one subject, but the mode in which the subject is treated, or the reasons which influenced the legislature, could not and need not be stated in the title, according to the letter and spirit of the constitution " (*See, also, Brewster* agt. *City of Syracuse*, 19 *N. Y.*, 116).

In that case James Ley and son had constructed a sewer under a contract with the city of Syracuse, and had been paid the full price stipulated in the contract.    Afterwards a law was passed (*chap.* 14, *Laws* 1857), entitled an act for the relief of James Ley & Son, by which the common council of Syracuse was empowered to assess and collect in the same manner as the expenses of constructing the sewer were by law authorized to be assessed and collected, the sum of $600, and to pay it over to Ley & Son for the construction of said sewer, in addition to the contract price.    The city was by its charter prohibited from paying any compensation above the contract

price, but could only do so in virtue of such special act. In that case JOHNSON, C. J., said (it being objected that the law was unconstitutional): " The title of the act is, an act for the relief of James Ley & Son. The substance of the act is that power is conferred on the common council of Syracuse to assess, collect and pay to James Ley & Son, contractors, for the construction of a sewer in that city, $600 in addition to the contract price. This constitutes but a single subject. The whole provision is framed to produce a single result — the relief of James Ley & Son. The different steps by which this relief is to be brought about are not distinct subjects, but are minor parts of the one general subject. This general subject is expressed in the title. The degree of particularity with which the title of an act is to express a subject is not defined in the constitution and rests in the discretion of the legislature (*Sun Mut. Ins. Co.* agt. *New York*, 4 *Selden*, 241). An abstract of the law is not required in the title, and its actual subject is in this law clearly and appropriately expressed."

I do not regard the more recent decision of the court of appeals, *In the Matter of Blodgett* (89 *N. Y.*,392), as being in conflict with the decision of the court of appeals above referred to. In that case the act was entitled "An act in relation to regulating and grading the Eighth avenue, in the city of New York." It was held that, as the act authorized the commissioners of public parks to change the grade of streets intersecting said avenue to conform to the grade thereof, it was repugnant to the provision of the constitution of the state now under consideration, and it was accordingly held that an assessment for grading an intersecting street was void. The grading of the Eighth avenue was a subject distinct and complete in itself. It did not necessarily follow that such grading would require that the intersecting streets should also be graded. The title of the act did not therefore express that subject, relating as it did solely to the regulating and grading of the Eighth avenue. From reading its title no one would be apprised of the fact that the intersecting streets were to be regu-

Matter of United States.

lated or graded.   Here the subject, as I have before stated, is the acquiring of the right of way, and what is necessarily incidental to it for the improvement of the Harlem river for the purposes stated in the act.   But if there is doubt upon this last point, it is not sufficiently grave to justify me in declaring upon a mere motion that the acts in question are invalid. Every presumption is in favor of the constitutionality of the acts of the legislature.   It is only in cases of a clear and substantial departure from the provisions of the fundamental law, that courts will declare acts of the legislature invalid (*Gilbert Elevated. Railway* agt. *Anderson*, 3 *Abb. N. C.*, 434; *People* agt. *Canal Board*, 55 *N. Y.*, 390; *In the Matter of the Metropolitan Gas-Light Co.*, 85 *N. Y.*, 527).

For these reasons I am of the opinion that the motion should be denied, with costs.

NOTE.—Affirmed by March general term, DAVIS, P. J., DANIELS and HAIGHT, JJ., on foregoing opinion.   [ED.