## Kohl et al. *v.* United States.

1. The right of eminent domain exists in the government of the United States, and may be exercised by it within the States, so far as is necessary to the enjoyment of the powers conferred upon it by the Constitution.
2. Where Congress by one act authorized the Secretary of the Treasury to purchase in the city of Cincinnati a suitable site for a building for the accommodation of the United States courts and for other public purposes, and by a subsequent act made an appropriation " for the purchase at private sale, or by condemnation of such site," power was conferred upon him to acquire, in his discretion, the requisite ground by the exercise of the national right of eminent domain; and the proper Circuit Court of the United States had, under the general grant of jurisdiction made by the act of 1789, jurisdiction of the proceedings brought by the United States to secure the condemnation of the ground.
3. Where proceedings for the condemnation of land are brought in the courts of Ohio, the statute of that State treats all the owners of a parcel of ground as one party, and gives to them collectively a trial separate from the trial of the issues between the government and the owners of other parcels; but each owner of an estate or interest in each parcel is not entitled to a separate trial.

ERROR to the Circuit Court of the United States for the Southern District of Ohio.

This was a proceeding instituted by the United States to appropriate a parcel of land in the city of Cincinnati as a site for a post-office and other public uses.

The plaintiffs in error owned a perpetual leasehold estate in a portion of the property sought to be appropriated. They moved to dismiss the proceeding on the ground of want of jurisdiction; which motion was overruled. They then demanded a separate trial of the value of their estate in the property; which demand the court also overruled. To these rulings of the court the plaintiffs in error here excepted. Judgment was rendered in favor of the United States.

There are three acts of Congress which have reference to the acquisition of a site for a post-office in Cincinnati. The first, approved March 2, 1872, 17 Stat. 39, is as follows: —

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Secretary of the Treasury be, and he is hereby, authorized and directed to purchase a central and suitable site in the city of Cincinnati, Ohio, for the erection of a building for the accommodation of the United States courts, custom-house, United States depository, post-office, internal-revenue and pension offices, at a cost not exceeding three hundred thousand dollars; provided that no money which may hereafter be appropriated for this purpose shall be used or expended in the purchase of said site until a valid title thereto shall be vested in the United States, and until the State of Ohio shall cede its jurisdiction over the same, and shall duly release and relinquish to the United States the right to tax or in any way assess said site and the property of the United States that may be thereon during the time that the United States shall be or remain the owner thereof."

In the Appropriation Act of June 10, 1872, 17 Stat. 352, a further provision was made as follows: —

"To commence the erection of a building at Cincinnati, Ohio, for the accommodation of the United States courts, custom-house, United States depository, post-office, internal-revenue and pension offices, and for the purchase, at private sale or by condemnation, of ground for a site therefor, — the entire cost of completion of which

building is hereby limited to two million two hundred and fifty thousand dollars (inclusive of the cost of the site of the same), — seven hundred thousand dollars; and the act of March 12, 1872, authorizing the purchase of a site therefor, is hereby so amended as to limit the cost of the site to a sum not exceeding five hundred thousand dollars."

And in the subsequent Appropriation Act of March 3, 1873, 17 Stat. 523, a further provision was inserted as follows: —

"For purchase of site for the building for custom-house and post-office at Cincinnati, Ohio, seven hundred and fifty thousand dollars."

*Mr. E. W. Kittredge* for plaintiffs in error.

1. For upwards of eighty years, no act of Congress was passed for the exercise of the right of eminent domain in the States, or for acquiring property for Federal purposes otherwise than by purchase, or by appropriation under the authority of State laws in State tribunals. A change of policy by Congress in this regard should not be supposed, unless the act is explicit. We do not raise the question as to the existence of the right of eminent domain in the national government; but Congress has never given to the Circuit Court jurisdiction of proceedings for the condemnation of property brought by the United States in the assertion or enforcement of that right.

In view of the uniform practice of the government, the provision in the act of Congress "for the purchase at private sale or by *condemnation*" means that the land was to be obtained under the authority of the State government in the exercise of its power of eminent domain. This is apparent from the language of the same section of the act of Congress of June 10, 1872, which appropriated a further sum for the "purchase" of a site in Cincinnati, and also appropriated money "to obtain by purchase, or to obtain by condemnation in the courts of the State of Massachusetts," a site for a post-office in Boston.

In this case, the State delegates its sovereign power of eminent domain. The United States, if it accepts this grant of power, accepts it as other corporations do, as the agent of the State, and must exercise it in the mode and by the tribunal which the State has prescribed.

2. If the proceeding was properly brought in the Circuit Court,

then the act of Congress of June 1, 1872, 17 Stat. 522, requires that it shall conform to the provisions of the law of the State in a like proceeding in a State court. The eighth section of the act of Ohio of April 23, 1872, 69 Ohio Laws, 88, secures to the owner of "each separate parcel" of property a separate trial, verdict, and judgment. The court below erred in refusing this demand of the plaintiff.

*Mr. Assistant Attorney-General Edwin B. Smith,* contra.

1. The right of eminent domain is an "inseparable incident of sovereignty." *Giesy* v. *C. W. & T. R.R. Co.,* 4 Ohio St. 323, 324; *West River Bridge* v. *Dix,* 6 How. 507; 2 Kent, 339; Cooley, Const. Lim. 526.

Of course the right of the United States is superior to that of any State. *Dobbins* v. *Comms.,* 16 Pet. 447.

The authority to purchase includes the right of condemnation. 4 Kent's Com. 372; *Burt* v. *Ins. Co.,* 106 Mass. 364; 7 Opinions of Att'y-Gen. 114.

Congress, by the use of the term "condemnation," indicated an expectation that it might and would be resorted to.

The legislature of Ohio concurred in this view of the power and necessity of such action, and passed an act of expropriation. 69 Ohio Laws, 81. But the right of a State to act as an agent of the Federal government, in actually making the seizure, has been denied. 23 Mich. 471.

The power to establish post-offices includes the right to acquire sites therefor, and by appropriation if necessary. *Dickey* v. *Turnpike Co.,* 7 Dana, 113; 2 Story on Const., sect. 1146.

Original cognizance "of all suits of a civil nature at common law or in equity," where the United States are plaintiffs or petitioners, is given to the Circuit Court of the United States.

"The term [suit] is understood to apply to any proceeding in a court of justice by which an individual pursues that remedy which the law affords." 2 Pet. 464.

No provision of local law confining a remedy to a State court can affect a suitor's right to resort to the Federal tribunals. *Hyde* v. *Stone,* 20 How. 170; *Payne* v. *Hook,* 7 Wall. 425; *Railway Co.* v. *Whitton,* 13 id. 270.

Therefore the United States had the right to pursue in the

Circuit Court the remedy given by the legislature of Ohio. 70 Ohio Laws, 36.

2. The power to consolidate different suits by various parties, so as to determine a general question by a single trial, is expressly given by act of July 22, 1833. 3 Stat.; 21 R. S., ch. 18, sect. 921, p. 175.

The statute of Ohio, 69 Ohio Laws, 88, requires that the trial be had as to each parcel of land taken, not as to separate interest in each parcel.

MR. JUSTICE STRONG delivered the opinion of the court.

It has not been seriously contended during the argument that the United States government is without power to appropriate lands or other property within the States for its own uses, and to enable it to perform its proper functions. Such an authority is essential to its independent existence and perpetuity. These cannot be preserved if the obstinacy of a private person, or if any other authority, can prevent the acquisition of the means or instruments by which alone governmental functions can be performed. The powers vested by the Constitution in the general government demand for their exercise the acquisition of lands in all the States. These are needed for forts, armories, and arsenals, for navy-yards and light-houses, for custom-houses, post-offices, and court-houses, and for other public uses. If the right to acquire property for such uses may be made a barren right by the unwillingness of property-holders to sell, or by the action of a State prohibiting a sale to the Federal government, the constitutional grants of power may be rendered nugatory, and the government is dependent for its practical existence upon the will of a State, or even upon that of a private citizen. This cannot be. No one doubts the existence in the State governments of the right of eminent domain, — a right distinct from and paramount to the right of ultimate ownership. It grows out of the necessities of their being, not out of the tenure by which lands are held. It may be exercised, though the lands are not held by grant from the government, either mediately or immediately, and independent of the consideration whether they would escheat to the government in case of a failure of heirs. The right is the offspring of political necessity; and it is inseparable

from sovereignty, unless denied to it by its fundamental law. Vattel, c. 20, 34; Bynk., lib. 2, c. 15; Kent's Com. 338–340; Cooley on Const. Lim. 584 *et seq.* But it is no more necessary for the exercise of the powers of a State government than it is for the exercise of the conceded powers of the Federal government. That government is as sovereign within its sphere as the States are within theirs. True, its sphere is limited. Certain subjects only are committed to it; but its power over those subjects is as full and complete as is the power of the States over the subjects to which their sovereignty extends. The power is not changed by its transfer to another holder.

But, if the right of eminent domain exists in the Federal government, it is a right which may be exercised within the States, so far as is necessary to the enjoyment of the powers conferred upon it by the Constitution. In *Ableman* v. *Booth*, 21 How. 523, Chief Justice Taney described in plain language the complex nature of our government, and the existence of two distinct and separate sovereignties within the same territorial space, each of them restricted in its powers, and each, within its sphere of action prescribed by the Constitution of the United States, independent of the other. Neither is under the necessity of applying to the other for permission to exercise its lawful powers. Within its own sphere, it may employ all the agencies for exerting them which are appropriate or necessary, and which are not forbidden by the law of its being. When the power to establish post-offices and to create courts within the States was conferred upon the Federal government, included in it was authority to obtain sites for such offices and for court-houses, and to obtain them by such means as were known and appropriate. The right of eminent domain was one of those means well known when the Constitution was adopted, and employed to obtain lands for public uses. Its existence, therefore, in the grantee of that power, ought not to be questioned. The Constitution itself contains an implied recognition of it beyond what may justly be implied from the express grants. The fifth amendment contains a provision that private property shall not be taken for public use without just compensation. What is that but an implied assertion, that, on

making just compensation, it may be taken? In Cooley on Constitutional Limitations, 526, it is said, —

"So far as the general government may deem it important to appropriate lands or other property for its own purposes, and to enable it to perform its functions, — as must sometimes be necessary in the case of forts, light-houses, and military posts or roads, and other conveniences and necessities of government, — the general government may exercise the authority as well within the States as within the territory under its exclusive jurisdiction: and its right to do so may be supported by the same reasons which support the right in any case; that is to say, the absolute necessity that the means in the government for performing its functions and perpetuating its existence should not be liable to be controlled or defeated by the want of consent of private parties or of any other authority."

We refer also to *Trombley* v. *Humphrey*, 23 Mich. 471; 10 Pet. 723; *Dickey* v. *Turnpike Co.*, 7 Dana, 113; *McCullough* v. *Maryland*, 4 Wheat. 429.

It is true, this power of the Federal government has not heretofore been exercised adversely; but the non-user of a power does not disprove its existence. In some instances, the States, by virtue of their own right of eminent domain, have condemned lands for the use of the general government, and such condemnations have been sustained by their courts, without, however, denying the right of the United States to act independently of the States. Such was the ruling in *Gilmer* v. *Lime Point*, 18 Cal. 229, where lands were condemned by a proceeding in a State court and under a State law for a United States fortification. A similar decision was made in *Burt* v. *The Merchants' Ins. Co.*, 106 Mass. 356, where land was taken under a State law as a site for a post-office and sub-treasury building. Neither of these cases denies the right of the Federal government to have lands in the States condemned for its uses under its own power and by its own action. The question was, whether the State could take lands for any other public use than that of the State. In *Trombley* v. *Humphrey*, 23 Mich. 471, a different doctrine was asserted, founded, we think, upon better reason. The proper view of the right of eminent domain seems to be, that it is a right belonging to a

sovereignty to take private property for its own public uses, and not for those of another. Beyond that, there exists no necessity; which alone is the foundation of the right. If the United States have the power, it must be complete in itself. It can neither be enlarged nor diminished by a State. Nor can any State prescribe the manner in which it must be exercised. The consent of a State can never be a condition precedent to its enjoyment. Such consent is needed only, if at all, for the transfer of jurisdiction and of the right of exclusive legislation after the land shall have been acquired.

It may, therefore, fairly be concluded that the proceeding in the case we have in hand was a proceeding by the United States government in its own right, and by virtue of its own eminent domain. The act of Congress of March 2, 1872, 17 Stat. 39, gave authority to the Secretary of the Treasury to purchase a central and suitable site in the city of Cincinnati, Ohio, for the erection of a building for the accommodation of the United States courts, custom-house, United States depository, post-office, internal-revenue and pension offices, at a cost not exceeding $300,000; and a proviso to the act declared that no money should be expended in the purchase until the State of Ohio should cede its jurisdiction over the site, and relinquish to the United States the right to tax the property. The authority here given was to purchase: If that were all, it might be doubted whether the right of eminent domain was intended to be invoked. It is true, the words " to purchase " might be construed as including the power to acquire by condemnation; for, technically, purchase includes all modes of acquisition other than that of descent. But generally, in statutes as in common use, the word is employed in a sense not technical, only as meaning acquisition by contract between the parties, without governmental interference. That Congress intended more than this is evident, however, in view of the subsequent and amendatory act passed June 10, 1872, which made an appropriation " for the purchase at private sale or by condemnation of the ground for a site " for the building. These provisions, connected as they are, manifest a clear intention to confer upon the Secretary of the Treasury power to acquire the grounds needed by the exercise of the national right of eminent do-

main, or by private purchase, at his discretion. Why speak of condemnation at all, if Congress had not in view an exercise of the right of eminent domain, and did not intend to confer upon the secretary the right to invoke it?

But it is contended on behalf of the plaintiffs in error that the Circuit Court had no jurisdiction of the proceeding. There is nothing in the acts of 1872, it is true, that directs the process by which the contemplated condemnation should be effected, or which expressly authorizes a proceeding in the Circuit Court to secure it. Doubtless Congress might have provided a mode of taking the land, and determining the compensation to be made, which would have been exclusive of all other modes. They might have prescribed in what tribunal or by what agents the taking and the ascertainment of the just compensation should be accomplished. The mode might have been by a commission, or it might have been referred expressly to the Circuit Court; but this, we think, was not necessary. The investment of the Secretary of the Treasury with power to obtain the land by condemnation, without prescribing the mode of exercising the power, gave him also the power to obtain it by any means that were competent to adjudge a condemnation. The Judiciary Act of 1789 conferred upon the circuit courts of the United States jurisdiction of all suits at common law or in equity, when the United States, or any officer thereof, suing under the authority of any act of Congress, are plaintiffs. If, then, a proceeding to take land for public uses by condemnation may be a suit at common law, jurisdiction of it is vested in the Circuit Court. That it is a " suit " admits of no question. In *Weston* v. *Charleston,* 2 Pet. 464, Chief Justice Marshall, speaking for this court, said, " The term [suit] is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice by which an individual pursues that remedy which the law affords. The modes of proceeding may be various; but, if a right is litigated in a court of justice, the proceeding by which the decision of the court is sought is a suit." A writ of prohibition has, therefore, been held to be a suit; so has a writ of right, of which the Circuit Court has jurisdiction (*Green* v. *Liter,* 8 Cranch, 229); so has *habeas corpus. Holmes* v. *Jamison,* 14 Pet. 564. When,

in the eleventh section of the Judiciary Act of 1789, jurisdiction of suits of a civil nature at common law or in equity was given to the circuit courts, it was intended to embrace not merely suits which the common law recognized as among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined as distinguished from rights in equity, as well as suits in admiralty. The right of eminent domain always was a right at common law. It was not a right in equity, nor was it even the creature of a statute. The time of its exercise may have been prescribed by statute; but the right itself was superior to any statute. That it was not enforced through the agency of a jury is immaterial; for many civil as well as criminal proceedings at common law were without a jury. It is difficult, then, to see why a proceeding to take land in virtue of the government's. eminent domain, and determining the compensation to be made for it, is not, within the meaning of the statute, a suit at common law, when initiated in a court. It is an attempt to enforce a legal right. It is quite immaterial that Congress has not enacted that the compensation shall be ascertained in a judicial proceeding. That ascertainment is in its nature at least *quasi* judicial. Certainly no other mode than a judicial trial has been provided.

. It is argued that the assessment of property for the purpose of taking it is in its nature like the assessment of its value for the purpose of taxation. It is said they are both valuations of the property to be made as the legislature may prescribe, to enable the government, in the one case, to take the whole of it, and in the other to take a part of it for public uses; and it is argued that no one but Congress could prescribe in either case that the valuation should be made in a judicial tribunal or in a judicial proceeding, although it is admitted that the legislature might authorize the valuation to be thus made in either case. If the supposed analogy be admitted, it proves nothing. Assessments for taxation are specially provided for, and a mode is prescribed. No other is, therefore, admissible. But there is no special provision for ascertaining the just compensation to be made for land taken. That is left to the ordinary processes of the law; and hence, as the government is a suitor for the property under

a claim of legal right to take it, there appears to be no reason for holding that the proper Circuit Court has not jurisdiction of the suit, under the general grant of jurisdiction made by the act of 1789.

The second assignment of error is, that the Circuit Court refused the demand of the defendants below, now plaintiffs in error, for a separate trial of the value of their estate in the property. They were lessees of one of the parcels sought to be taken, and they demanded a separate trial of the value of their interest; but the court overruled their demand, and required that the jury should appraise the value of the lot or parcel, and that the lessees should in the same trial try the value of their leasehold estate therein. In directing the course of the trial, the court required the lessor and the lessees each separately to state the nature of their estates to the jury, the lessor to offer his testimony separately, and the lessees theirs, and then the government to answer the testimony of the lessor and the lessees; and the court instructed the jury to find and return separately the value of the estates of the lessor and the lessees. It is of this that the lessees complain. They contend, that whether the proceeding is to be treated as founded on the national right of eminent domain, or on that of the State, its consent having been given by the enactment of the State legislature of Feb. 15, 1873 (70 Ohio Laws, 36, sect. 1), it was required to conform to the practice and proceedings in the courts of the State in like cases. This requirement, it is said, was made by the act of Congress of June 1, 1872. 17 Stat. 522. But, admitting that the court was bound to conform to the practice and proceedings in the State courts in like cases, we do not perceive that any error was committed. Under the laws of Ohio, it was regular to institute a joint proceeding against all the owners of lots proposed to be taken (*Giesy* v. *C. W. & T. R.R. Co.*, 4 Ohio St. 308); but the eighth section of the State statute gave to "the owner or owners of each separate parcel" the right to a separate trial. In such a case, therefore, a separate trial is the mode of proceeding in the State courts. The statute treats all the owners of a parcel as one party, and gives to them collectively a trial separate from the trial of the issues between the government and the owners of other parcels. It

hath this extent; no more. , The court is not required to allow a separate trial to each owner of an estate or interest in each parcel, and no consideration of justice to those owners would be subserved by it. The Circuit Court, therefore, gave to the plaintiffs in error all, if not more than all, they had a right to ask.      *The judgment of the Circuit Court is affirmed.*

MR. JUSTICE FIELD dissenting.

Assuming that the majority are correct in the doctrine announced in the opinion of the court, — that the right of eminent domain within the States, using those terms not as synonymous with the ultimate dominion or title to property, but as indicating merely the right to take private property for public uses, belongs to the Federal government, to enable it to execute the powers conferred by the Constitution, — and that any other doctrine would subordinate, in important particulars, the national authority to the caprice of individuals or the will of State legislatures, it appears to me that provision for the exercise of the right must first be made by legislation. The Federal courts have no inherent jurisdiction of a proceeding instituted for the condemnation of property; and I do not find any statute of Congress conferring upon them such authority. The Judiciary Act of 1789 only invests the circuit courts of the United States with jurisdiction, concurrent with that of the State courts, of suits of a civil nature at common law or in equity; and these terms have reference to those classes of cases which are conducted by regular pleadings between parties, according to the established doctrines prevailing at the time in the jurisprudence of England. The proceeding to ascertain the value of property which the government may deem necessary to the execution of its powers, and thus the compensation to be made for its appropriation, is not a suit at common law or in equity, but an inquisition for the ascertainment of a particular fact as preliminary to the taking; and all that is required is that the proceeding shall be conducted in some fair and just mode, to be provided by law, either with or without the intervention of a jury, opportunity being afforded to parties interested to present evidence as to the value of the property, and to be heard thereon. The proceeding by the States, in the

exercise of their right of eminent domain, is often had before commissioners of assessment or special boards appointed for that purpose. It can hardly be doubted that Congress might provide for inquisition as to the value of property to be taken by similar instrumentalities; and yet, if the proceeding be a suit at common law, the intervention of a jury would be required by the seventh amendment to the Constitution.

I think that the decision of the majority of the court in including the proceeding in this case under the general designation of a suit at common law, with which the circuit courts of the United States are invested by the eleventh section of the Judiciary Act, goes beyond previous adjudications, and is in conflict with them.

Nor am I able to agree with the majority in their opinion, or at least intimation, that the authority to purchase carries with it authority to acquire by condemnation. The one supposes an agreement upon valuation, and a voluntary conveyance of the property: the other implies a compulsory taking, and a contestation as to the value. *Beekman* v. *The Saratoga & Schenectady Railroad Co.*, 3 Paige, 75; *Railroad Company* v. *Davis*, 2 Dev. & Batt. 465; *Willyard* v. *Hamilton*, 7 Ham. (Ohio), 453; *Livingston* v. *The Mayor of New York*, 7 Wend. 85; *Koppikus* v. *State Capitol Commissioners*, 16 Cal. 249.

For these reasons, I am compelled to dissent from the opinion of the court.