### MURHARD ESTATE CO. v. PORTLAND & SEATTLE RY. CO.

(Circuit Court of Appeals, Ninth Circuit. July 6, 1908.)

No. 1,420.

1. **EMINENT DOMAIN—CONDEMNATION PROCEEDINGS—NATURE AND MODE OF REVIEW.**

   A proceeding to take land for public use by condemnation is a suit at common law and is reviewable only by writ of error.

2. **APPEAL AND ERROR—MATTERS REVIEWABLE—FINDINGS OF JURY.**

   Under the seventh constitutional amendment, the only modes by which a fact tried by a jury can be re-examined in any court of the United States are the granting of a new trial by the trial court, or by an appellate court for some error of law in the proceedings.

3. **SAME—RULING ON MOTION FOR NEW TRIAL.**

   In the federal courts a motion for new trial is addressed to the discretion of the court, and its ruling thereon is not reviewable.

4. **SAME—CONDEMNATION PROCEEDINGS—TRIAL—VIEW BY JURY.**

   Under Ballinger's Ann. Codes & St. Wash. § 4998 (Pierce's Code, § 612), which provides that a jury may be permitted to view the real property in litigation whenever in the opinion of the court it is proper, the refusal of the court to grant such permission in a condemnation suit is reviewable only for an abuse of discretion.

5. **TRIAL—INSTRUCTIONS.**

   The refusal of instructions requested in a proceeding by a railroad company to condemn right of way, relating to the measure of compensation recoverable, *held* not error, in view of the charge given.

Appeal from and in Error to the Circuit Court of the United States for the Western District of Washington.

The Portland & Seattle Railway Company, defendant in error, brought suit in one of the courts of the state of Washington against the Murhard Estate Company, plaintiff in error, to condemn a right of way for railroad purposes across land owned by the Murhard Estate Company in Clark county, Wash. It is provided by the statutes of Washington (sections 5637–5640, Ballinger's Ann. Codes & St. [Pierce's Code, §§ 5102–5105]), in substance, that a corporation seeking to exercise the right of eminent domain shall file in the superior

court of the county where the land is located, a petition setting out the description of the land needed, the names of the owners, the object for which the land is sought, together with a prayer for a jury to determine the compensation to be made. It is also provided that the court shall first grant a hearing and determine whether the particular land sought to be appropriated is necessary for the enterprise. If the court finds in favor of the petitioner, a jury shall be summoned to assess and determine the amount to be awarded the landowner for taking or injuriously affecting his land, irrespective of any benefits arising by reason of the proposed improvement. The Murhard Estate Company, by proper proceedings, had the cause removed to the United States Circuit Court for the Western District of Washington, and thereafter, in the federal court, a trial was had before a jury, and an award of $6,000 made in favor of the Murhard Estate Company. Judgment was thereafter entered in favor of the Murhard Estate Company for the sum of $6,000, and awarding use of the premises involved to the railway company. The award not being satisfactory to the Murhard Estate Company, it seeks to bring the cause before this court by appeal and writ of error.

Milton W. Smith, for Murhard Estate Co.

James B. Kerr and George T. Reid, for Portland & Seattle Ry. Co.

Before GILBERT, Circuit Judge, and DE HAVEN and HUNT, District Judges.

HUNT, District Judge (after stating the facts as above). The appeal in the case will have to be dismissed. A proceeding to take land for public uses by condemnation is a suit at common law. This was decided in Kohl et al. v. United States, 91 U. S. 367, 23 L. Ed. 449, the court citing Weston v. Charlston, 2 Pet. 464, 7 L. Ed. 481. "The right of eminent domain," said Justice Strong, "always was a right at common law. It was not a right in equity, nor was it even the creature of a statute. The time of its exercise may have been prescribed by statute, but the right itself was superior to any statute."

In Chicago, Burlington & Quincy Railroad Company v. Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979, the Supreme Court, on writ of error, considered questions relating to the jurisdiction of that court to re-examine a final judgment of the Supreme Court of Illinois, where, in an eminent domain proceeding, under the laws of the state, a jury had fixed a compensation to be paid to certain individual owners of parcels of land sought to be taken. The Constitution of Illinois, like the Constitution of Washington, declared that no person should be deprived of his property without due process of law, and that private property shall not be taken or damaged for public use without just compensation. The court considered whether it could go behind the final judgment of the state court for the purpose of re-examining and weighing the evidence, and of determining whether, upon the facts, the jury erred in not returning a verdict in favor of the railroad company for a larger sum than was assessed. The question was discussed with reference to the seventh amendment to the Constitution, which provides that:

"In suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law,"

—and also with reference to section 709, Rev. St. (U. S. Comp. St. 1901, p. 575), which provides that the final judgment of the highest court of a state in certain instances may be re-examined by the Supreme Court upon writ of error. The court held that the last clause of the seventh amendment is not restricted in its application to suits at common law tried before juries in the courts of the United States, but "applies equally to a case tried before a jury in a state court and brought here by writ of error from the highest court of the state," and refused to retry the facts tried by the jury. Nor did the court regard it as material that the proceeding was one under the state's power of eminent domain, for the jury, impaneled under the laws of the state, was regarded as a jury as ordained by the Constitution of the state in cases of the condemnation of private property for public use, and, having been a jury within the meaning of the seventh amendment to the Constitution of the United States, the facts tried by it could not be retried in any court of the United States otherwise than according to the rules of the common law. "The only modes known to the common law to re-examine such facts are the granting of a new trial by the court where the issue was tried, or to which the record is properly returnable, or the award of a venire facias de novo by an Appellate Court for some error of law which intervened in the proceeding."

In the later case of Metropolitan Railroad Company v. District of Columbia, 195 U. S. 322, 25 Sup. Ct. 28, 49 L. Ed. 219, appeal and writ of error were taken to obtain a review of the action of the Court of Appeals of the District of Columbia, affirming an order of a lower court which sustained an award against the railroad company contained in the verdict of a jury, rendered in condemnation proceedings under an act of Congress. It was said:

"That a proceeding involving the exercise of the power of eminent domain is essentially but the assertion of a right legal in its nature has been determined. So, also, the decisions of this court have settled that a condemnation proceeding initiated before a court conducted under its supervision with power to review and set aside the verdict of the jury, and with the right of review vested in an appellate tribunal, is in its nature an action at law. Kohl v. U. S., 91 U. S. 367 (23 L. Ed. 449); Searl v. School District No. 2, 124 U. S. 197 (8 Sup. Ct. 460, 31 L. Ed. 415); Chappell v. United States, 160 U. S. 499 (16 Sup. Ct. 397, 40 L. Ed. 510)."

The appeal was dismissed. Plaintiff in error could have moved for a new trial under section 726, Rev. St., which provides that the Circuit Courts of the United States have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law.

In United States v. Train et al. (C. C.) 12 Fed. 852, Justice Gray, sitting in the Circuit Court, held that section 914 of the Revised Statutes,[1] providing that the practice and procedure in the United States courts shall conform as near as may be to the practice and procedure existing at the time in like causes in the courts of record of the state within which said courts are held, does not apply to motions for a new trial; nor, "whatever rule may be prescribed by the statutes of the state upon that subject, does it control or affect the power of the federal courts under Judiciary Act Sept. 24, 1789, c. 20, 1 Stat. 83, § 17, and under section 726 of the Revised Statutes (U. S. Comp.

[1] U. S. Comp. St. 1901, p. 684.

St. 1901, p. 584), to grant or refuse a new trial at their discretion."

In Indianapolis, etc., R. R. Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898, it was held that a motion for a new trial is addressed to the discretion of a court of the United States, and that such a motion is not a mere matter of proceeding or practice in the District and Circuit Courts, and is not therefore within the act of June 1, 1872, and cannot be affected by any state law upon the subject. This rule was followed in Chateaugay Iron Company, Petitioner, 128 U. S. 544, 9 Sup. Ct. 150, 32 L. Ed. 508, and in Missouri Pacific Railway Company v. Chicago & Alton R. Co., 132 U. S. 191, 10 Sup. Ct. 65, 33 L. Ed. 309.

In Wilson v. Everett, 139 U. S. 616, 11 Sup. Ct. 664, 35 L. Ed. 286, the principal ground of complaint by the defendant was that the jury had no basis for finding a verdict in a certain sum; but the Supreme Court said that was a question to be reached only through a motion for a new trial, and that on writ of error no error committed in that respect by the jury could be reviewed.

In Hughey v. Sullivan (C. C.) 80 Fed. 72, Judge Hammond considered the effect of an order made by the Circuit Court of the United States granting a new trial in a case where damages assessed by the jury were inadequate. A statute of the state of Ohio forbade the granting of a new trial on account of the smallness of damages for an injury to the person or reputation of another. It was contended that the state statute was a rule of property; but the learned judge held that, as a practice act, it was not binding upon the federal court, not being within the purview of section 914, Rev. St., and he affirmed the rule laid down in Mattox v. United States, 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917, that the granting or denying of a new trial rests in the sound discretion of the court, and could not be made the subject of review by writ of error. Foster's Federal Practice, 885.

In Capital Traction Co. v. Hof, 174 U. S. 1, 19 Sup. Ct. 580, 43 L. Ed. 873, the court sustained the reasoning of Justice Nelson in Justices v. Murray, 9 Wall. 274, 19 L. Ed. 658, analyzing the statements of Justice Story in Parsons v. Bedford, 3 Pet. 433, 7 L. Ed. 732, saying:

"The ratio decidendi, the line of thought pervading and controlling the whole opinion, was that the seventh amendment undoubtedly prohibited any court of the United States from re-examining facts once tried by a jury in a lower court of the United States, and that there was no reason why the prohibition should not equally apply to a case brought into a court of the United States from a state court. 'In both instances, the cases are disposed of by the same system of laws and by the same judicial tribunal.'"

In the light of these authorities, it is clear that the right to move for a new trial existed, and that this court cannot re-examine the facts tried by the jury.

We are cited to the case of United States v. Tennant et al. (D. C.) 93 Fed. 613, wherein the District Court of the Northern Division of Washington had before it a proceeding for the condemnation of land necessary for fortifications. A verdict was rendered by a jury in favor of Mrs. Wood, the owner of certain tracts. The United States moved for a new trial on the ground that the compensation awarded

was excessive. The court, through Judge Hanford, presiding, decided that the statutes of the United States (1 Supp. Rev. St. U. S. [2d Ed.] pp. 601, 780), providing that proceedings for the condemnation of land required for fortifications should conform as near as may be to the practice in condemnation proceedings in the courts of the state, in which the land is situated, made it the duty of the federal court to deny the motion for a new trial and to leave to the appellate court the question as to the amount of damages because, under the eminent domain statutes of the state, not only was there no provision expressly conferring power upon the trial court to set aside the verdict of a jury or grant a new trial, but authority was expressly given to the appellate court to determine the amount of damages. The foundation, however, of the decision of the learned judge (who presided also at the trial of the present case), was that the statutes of the United States just referred to specially controlled in proceedings had by the government for the condemnation of land for fortifications, and, by their terms, prescribed that the practice in the courts of the state in which the land is situated should govern in the federal court. But we know of no such statute to be applied to ordinary condemnation proceedings, which, as we have shown, are governed by the usual practice pertaining to suits at law in the federal court.

Confining our consideration of the case to errors assigned, we find the first contention is that the court erred in refusing to permit the jury to view the premises in question. The statute of Washington (section 4998, Ballinger's Ann. Codes & St. [Pierce's Code, § 612]) provides that whenever, in the opinion of the court, it is proper that the jury should have a view of the real property in litigation, it may order the jury to be conducted in a body to view the premises. The question is left to the discretion of the trial court, and as the record before us shows that maps of the land were introduced, and that engineers testified in detail concerning the nature of the land, the location of the quarry involved, how it could and should be worked, the position of the railroad tracks, and of the road, we cannot say that there was any abuse of discretion in not sending the jury to see the premises. 2 Lewis on Eminent Domain, § 424; Wigmore on Evidence, § 1164.

One of the instructions asked by the Murhard Estate Company, and refused by the court, was to the effect that claimant was entitled to recover the market value of the property taken by the proposed right of way and for the depreciation in the market value of the remaining premises, and that the owner of the property was entitled to the difference in value of the entire land, as a whole, as it was before the taking, and as it was or would be after the construction of the improvement, irrespective of any benefits which might arise by reason of the construction of the railroad. The point made is that the court should have told the jury expressly that the recovery should be had by ascertaining the value "irrespective of any benefits which might arise by reason of the construction of the railroad." This is the rule as provided by the Constitution of Washington (art. 1, § 16), and by section 5641, Ballinger's Ann. Codes & St. (Pierce's Code, § 5106); but there is nothing in the record to show that the railroad company

attempted in any way to introduce any element of benefits, or that any benefits as excluded by the constitutional provision were testified to.

Taken as a whole, the instructions conveyed to the jury a clear understanding of the rules of law necessary to guide them upon the measure of compensation. After stating the obligation of the Portland & Seattle Railway Company to pay for the appropriation and use of the land in question, the court, among other things, charged that the value was to be the fair market value, and that the railway company must pay to the owner such sum as would compensate it for any damage done by building the railroad through the premises on account of the impairment of the value of the part of the land retained by the owner. The jury were also told, in substance, that in estimating the value of what an owner retains, and the money it receives for what is taken, the owner should be as well off in a pecuniary sense as if it had not been interfered with. They were told to consider the value of the land in the situation in which it was without the railroad, and in the situation in which it would be with the railroad constructed and in operation. Their attention was addressed to the consideration of the kind of land involved, the use that it might be put to, and to whatever might be found to be an element of damage, including any additional expense in the use of the property and the interfering with the use or loss of an opportunity to make it yield a profit. These matters were fairly and sufficiently covered by the court in a way to make it impossible to believe that the jury considered benefits in assessing just compensation.

The court also refused a requested instruction to the effect that, if the jury found that the property contained stone which was available and would be required for use in jetty construction or other purposes, they should take into consideration the quantity of stone, and that the fact that the property was not then in use for such purposes was not material. It is undoubtedly correct, generally speaking, that property is not to be deemed worthless because the owner allows it to go to waste, and is not to be regarded as valueless because the owner is unable to put it to any use, and that a capability of being made available for use gives it a market value which can be estimated. Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206. But this principle was recognized by the court by that portion of the charge which stated that the principal value of a cliff on the north side was the rock "that may be disposed of at a price." The court also said to the jury:

"You are to judge of all of the circumstances shown by the testimony, to determine whether that part of the claimant's property on the north side will be damaged by the location of the railroad, and, if so, consider all of the uses it may be put to, and determine what would be a reasonable assessment for the damage."

Another request, which was refused by the court, stated generally that the county through which the railroad passed did not own the land covered by the county road, but that the owner of the land through which the road ran owned the land in the county road subject to an easement for the public, and that the owner of the land could leave his wagon in the road or leave a pile of stone in the road as long as

such things did not materially interfere with the right of the public to travel safely. This was a statement of abstract propositions without such apparent relation to the case as to enable us to say that the court erred in not adopting it.

By the fourth and fifth requested instructions which were refused, plaintiff in error asked the court to charge, in effect, that the owner of the land involved could blast stone and permit the same to be thrown or roll down upon the county road, provided precautions were taken to prevent accident, and to remove quickly such stone as might obstruct travel; but that a railroad company has absolute control of the land within the limits of its right of way and, upon condemnation, can erect buildings on its right of way, and can take out rock and earth within its right of way at its convenience, and that in this case the owner of the quarry would have no right to blast stone so as to throw it upon the railroad right of way, and that, if stone were blasted and thrown upon the right of way, the railroad company could sue for damages and for an injunction to prevent the continuance of such blasting. We think the instruction was properly refused, because it was not material to the case that the court should draw any distinction between possible right of the quarry owner to throw stones upon the county road situate between the railroad and cliff, and the right such an owner had to throw stones upon the right of way of the railroad company. The only right that was material to be determined in the case was that of the railroad company toward the plaintiff in error, and upon that issue the charge was, in substance: That, in quarrying rock and transporting it, an owner must so use his property as not to injure others; that prudence and care would be required in operating the quarry so as not to injure people who might be traveling on the railroad, or to injure the property of the railroad company in using an elevated tramway the quarry owner had been given a right to use; and that the jury should consider whether the quarry owner was damaged by having the railroad there by reason of any additional expense or inconvenience or impairment in the value of the property. A proper standard of care was sufficiently well laid down to enable the jury to consider the restrictions upon the use of the property and to weigh the evidence upon the point in considering damages.

These views dispose of the questions of law, of which, upon the record, we can take cognizance, and which we think are of sufficient importance to require notice,

Being of the opinion that no error was committed, the judgment is affirmed.