UNITED STATES of America,
Plaintiff,

v.

CERTAIN PARCELS OF LAND IN WIL-
LIAMS COUNTY, State of NORTH DA-
KOTA; and Williams County, et al.,
and Unknown Owners, Defendants.

Civ. No. 253.

United States District Court
D. North Dakota,
Northwestern Division.

Nov. 20, 1959.

Robert Vogel, U. S. Atty., by John J. Mulready, and James A. Murray, Asst. U. S. Attys., Fargo, N. D., for plaintiff.

Higgins & Murphy, by Milton K. Higgins, Bismarck, N. D., for defendants Williston Livestock Commission Co. and Reuben Brakken.

Gerald G. Glaser, Bismarck, N. D., for Public Service Commission of the State of North Dakota.

Nilles, Oehlert & Nilles, by Francis J. Magill, Fargo, N. D., for Great Northern Railway Co. (which is not a party to this hearing, but has a contract with the Government on the matter involved herein).

**314**

REGISTER, Chief Judge.

The above entitled action was commenced by the United States Attorney for the District of North Dakota by the filing of a Complaint in Condemnation in the office of the Clerk of this Court. The action was brought in accordance with instructions from the Department of Justice, pursuant to a request from Wilber M. Brucker, Secretary of the Army of the United States, determining the necessity for the acquisition by the United States of certain roads and highways in the County of Williams, State of North Dakota. The action was brought to condemn all the right, title and interests of Williams County and of specific townships therein in and to the county and township roads and highways, and the rights of way therefor, located within the perimeter boundaries of lands described in the Complaint, for public use in connection with the construction and operation of the Garrison Dam and Reservoir Project. Thereafter, and on August 4, 1959, an order of this Court was duly entered and filed, which order granted delivery of immediate possession of said roads and highways to the United States.

Prior to the commencement of this action, and on February 4, 1953, the United States entered into a written contract with said county and townships providing for the relocation, rearrangement or alteration of portions of said county and township roads according to plans and projects therein set forth, at a cost to the United States of approximately $200,000, and for the conveyance by said county and townships of all their rights, title and interests in and to said road rights of way lying within the boundaries of the land acquired by the plaintiff for the Garrison Dam and Reservoir Project without additional cost. Among the relocation projects provided for in said contract is the closure of an underground railroad crossing beneath the main line of the Great Northern Railway in the SE¼ of Section 19–154–100, near the city of Williston in Williams County, North Dakota, and the construction of a new overpass over said line as a substitute facility therefor in the vicinity of the underpass. Construction of the overpass has been accomplished.

The construction program of the United States in connection with the Garrison Dam Project provides for the filling in of the underground crossing in such a way as to protect the railroad bed from erosion and washing away when the waters of the reservoir flood the lands immediately adjacent thereto. In the course of the performance of the work program in carrying out the projects provided for in said contract, the United States entered into a contract with the Great Northern Railway Company, as contractor, to fill in the underground crossing in such a way as to protect the rail bed as heretofore stated.

The Williston Livestock Commission Company owns real property adjacent to said underpass, and operates its business, including a livestock sales ring, at that location. This company considers it very important to its business that the underpass remain open, and takes the position that a dike can be built on the west side of the road approaching the underpass from both the north and the south sides of the track which would prevent the waters of the reservoir from flowing into the underpass, and hence the same could remain open. It appears that the elevation of the county highway at the entrance to the sales ring grounds is slightly under the 1,850 foot level, the maximum height of the reservoir level, and that therefore, when raised to that level the reservoir would flood the road at least for a short distance. The floor of the underpass is somewhat below the level of the ground immediately to the north and south thereof. The Corps of Engineers, at all times here involved, have contended that it was necessary to close the underpass as a part of the project for the construction and use of Garrison Dam and Reservoir. The underpass has been used primarily by the Williston Livestock Commission Company and those doing business with it, although it has apparently been used daily by other

members of the public. The new overpass which has been constructed as a substitute is located approximately one mile northeasterly of the old underpass and is not as convenient as the latter for the business of said Commission company.

On August 26, 1959, the Commission company, Reuben Brakken, and Charles Vizina, owners of land in the vicinity of the underpass to be closed, filed a petition with the Public Service Commission of the State of North Dakota, demanding that the Great Northern Railway Company be required to maintain said underpass until a hearing be had before such agency and its final order with reference to the closing be issued. The Public Service Commission thereafter issued a notice of hearing said petition and set as a time and place therefor November 4, 1959, at ten o'clock a. m., in the Courthouse at Williston, North Dakota.

Employees and agents of the contractor (Great Northern Railway Company) went to the underpass to commence filling in the crossing, pursuant to its contract with the plaintiff, but were ordered by the Sheriff of Williams County to discontinue such work and depart the site. The record fails to disclose any authority upon which the Sheriff based such order and action. Accordingly, the work was suspended.

No application was ever made to the North Dakota Public Service Commission to close the underpass or to construct the new overpass which has been substituted therefor.

This matter came before the Court upon motion by the United States for a permanent injunction. The government contended that, in view of the season of the year and the weather conditions which normally prevail during that time, such interference with and delay in the performance of the projected work would necessarily cause damage to the Government and a breach of its contract to provide necessary protective devices to the rail bed.

The plaintiff moved for a decree against the Public Service Commission of the State of North Dakota, LeRoy Lutz as Sheriff of Williams County, North Dakota, Williston Livestock Commission Company, Reuben Brakken and Charles Vizina, permanently enjoining them and each and all of their officers, agents, servants, employees and representatives from interfering with or obstructing the United States in its program of construction and operation of the Garrison Dam and Reservoir Project, or the relocation, rearrangement or alteration of portions of the county and township roads and highways in said county and townships, which highways and roads were acquired by the United States for use in the Garrison Dam and Reservoir Project, and for such other and further relief in the premises as to the Court may seem just and proper. A hearing on plaintiff's motion was heard at Minot, North Dakota, on the 14th day of October, 1959. Trial briefs were presented to the Court and testimony and other evidence submitted. Arguments of respective counsel were heard, the appearances being as hereinbefore noted. No appearance was made by or on behalf of the Sheriff of Williams County. Mr. Charles Vizina appeared in person, was called as a witness by the United States, and stated that he did not oppose granting of the relief prayed for.

Briefly, counsel for the United States take the position that the construction program in connection with the Garrison Dam Project provides for the filling in of said underground crossing in such a way as to protect the rail bed from erosion and washing away when the water of the Reservoir floods the lands immediately adjacent thereto; that a contract was duly made and entered into by and between the United States of America and the Great Northern Railway Company whereby said Railway Company is to perform such work; that interference therewith is interference with the exercise by the United States of its power of eminent domain, and that it is therefore entitled to the relief demanded. Adverse parties contend that the closing of this underpass is not necessary to the operation or maintenance of the

Reservoir nor is it necessary for the protection of the rail bed, and that the question of whether the underpass should be closed or maintained in its open condition is one solely within the jurisdiction of the Public Service Commission of North Dakota and that the Great Northern Railway Company is subject to the decision and order of said Public Service Commission. They contend that said Commission has properly before it, and set for hearing, the question of whether the Railway Company should be required to maintain said underpass and that the proper proceeding of the United States, if interested in said matter, is to appear at the hearing before said Commission and present evidence.

There was no dispute as to the facts hereinbefore stated. Direct evidence was produced as to ownership of certain lands adjacent to the underpass, by said Livestock Commission Company, together with its rights as lessee from said Railway Company as to a part of the right of way thereof. Mr. Brakken testified that if the underpass is closed, it will lower the value of certain nearby property owned by him. He further testified that he owns other land and that if necessary he can use the new overpass. The Declaration of Necessity for the taking by the Secretary of War was received as Exhibit 4. It was stipulated into the record that the so-called "Scenic Highway" which is the public highway of which the underpass is a part, is a part of the road and land contained in the perimeter description of the land taken by the United States in these proceedings. It is conceded that the United States does have the right of possession of the premises involved. None of the parties here seeking to prevent the closing of the underpass were parties to, or made any appearance in, the original condemnation proceeding.

Sections 24-0910 and 24-0911, N.D. R.C.1943, provide as follows:

"Changing Railroad Crossing; Power of Public Service Commission; Hearing; Closing Old Crossing. Whenever it is desired, either by the public officials having the necessary authority or by the railway company operating the railroad, to establish, vacate, or relocate any crossing of a public highway and a railroad, or to separate grades, and an agreement cannot be reached between such public official and the railway company, either as to the necessity for establishing, vacating, or relocating a crossing or for separating grades, as to place, manner of construction, or a reasonable division of the expense, either party may file a petition with the commission, setting forth the facts and submitting the matter to it for determination. The commission, after such notice as it shall deem reasonable, shall conduct a hearing and shall issue its order determining whether there should be an establishment, vacation, or relocation of the crossing in question, or a separation of grades, and dividing the expense of such establishment, vacation, relocation, or separation of grades. * * * *"

"Overhead and Underground Railroad Crossings May Be Required. The commission may require any railroad to construct and maintain overhead or underground crossings and separate grades when in its opinion the interest and safety of the public require, and may apportion the costs therefor in such manner as the commission deems proper, and no overhead or underground crossing, nor separation of grades, shall be made except upon petition therefor to the commission and with the commission's approval."

That the United States of America has the right to take private property for public use upon payment of just compensation, as provided for in the Fifth Amendment to the Constitution of the United States, is beyond doubt, and is in fact conceded by defendants. This right includes the right to take property already devoted to a public use.

"In the determination of the question whether or not property already devoted to a public use can be subjected to the process of eminent domain the primary factor to be considered is the character of the condemnor.

"If the sovereign, such as the state or the United States on its own behalf and for its own sovereign purposes, seeks to acquire such property by eminent domain, the character of the 'res' as public property, generally, has no inhibiting influence upon the exercise of the power." Nichols on Eminent Domain, Vol. 1, pp. 131, 132. Numerous cases are therein cited in support of this statement.

The basic principles here involved were forcefully stated by Mr. Justice Strong in Kohl v. United States, 91 U.S. 367, 23 L.Ed. 449, as follows:

"It has not been seriously contended during the argument that the United States government is without power to appropriate lands or other property within the States for its own uses, and to enable it to perform its proper functions. Such an authority is essential to its independent existence and perpetuity. These cannot be preserved if the obstinancy of a private person, or if any other authority, can prevent the acquisition of the means or instruments by which alone governmental functions can be performed.

"If the right to acquire property for such uses may be made a barren right by the unwillingness of property-holders to sell, or by the action of a State prohibiting a sale to the Federal government, the constitutional grants of power may be rendered nugatory, and the government is dependent for its practical existence upon the will of a State, or even upon that of a private citizen. This cannot be.

"The proper view of the right of eminent domain seems to be, that it is a right belonging to a sovereignty to take private property for its own public uses, and not for those of another. Beyond that, there exists no necessity; which alone is the foundation of the right. If the United States have the power, it must be complete in itself. It can neither be enlarged nor diminished by a State. Nor can any State prescribe the manner in which it must be exercised."

The constitutionality of the North Dakota statutes hereinbefore quoted is not here involved. In a case involving such question, the provisions thereof doubtless would be construed and considered as a valid exercise of the police power of the state. However, in the Court's opinion they are not applicable to the present situation. This is not a case in which the Great Northern Railway Company, as an operating railroad, seeks to fill in and hence close and vacate an underground crossing, for its own convenience or, allegedly, for the convenience or safety of the public.

The Great Northern Railway Company is here involved only as a government contractor; it is a party about to perform an obligation which it has assumed as a contracting party under a contract entered into with the United States of America, which contract was made in the exercise of the latter's unquestioned power of eminent domain. As to the performance of its obligations under that contract (which here includes the closing of an underpass) such government contractor is not subject to the supervisory or regulatory control or determination of the Public Service Commission of North Dakota.

In the defendant's petition to the Public Service Commission of North Dakota, hereinbefore referred to, the relief prayed for by the petitioners is, in part, as follows:

"That an order of this Commission be directed to and served upon Respondent, Great Northern Railway Company, restraining the enclosure or obstruction of the underground crossing described herein. * * * "

■■ One of the purposes for which the contract was entered into between the United States of America and said Railway Company was to permanently obstruct and close such underground crossing. If such an order as prayed for in the petition just described were entered by the Public Service Commission, the necessary effect thereof would be to interfere with and obstruct or diminish the exercise of the power of eminent domain on the part of the United States. Such order would, in effect, purport to prevent and restrain the execution by the Railway Company of its obligations under its contract with the United States of America. No action can be legally taken by an individual, or by a state, or by any agency thereof, which would diminish or interfere with the exercise of the power of eminent domain by the United States. If the contrary were true, such power would not be complete in itself.

Immediately following the hearing on October 14, 1959, this Court from the bench orally granted plaintiff's motion, stated its reasons therefor, and its Order of Permanent Injunction was signed and filed on October 21, 1959. This Memorandum is in accordance and consistent with said Order.